

1   **SAN DIEGO UNIFIED PORT DISTRICT**
    **DUANE E. BENNETT**
2   **ELLEN GROSS MILES (SBN 149127)**
    **DEPUTY PORT ATTORNEY**
3   **P.O. Box 120488**
    **San Diego, CA 92112-0488**
4   **Telephone:  (619) 686-6219**
    **Facsimile:  (619) 686-6444**
5
    Attorneys for Defendant
6   SAN DIEGO UNIFIED PORT DISTRICT

7

8                    **UNITED STATES DISTRICT COURT**

9              **IN THE SOUTHERN DISTRICT OF CALIFORNIA**

10  DANIEL RENARD                              )    Case No. **07 CV 2347 JAH JMA**
                                               )
11              Plaintiff,                     )    [County of San Diego Superior Court Case
                                               )    No. 37-2007-00073093-CU-BC-CTL]
12  vs.                                        )
                                               )    **NOTICE OF REMOVAL OF ACTION**
13  SAN DIEGO UNIFIED PORT DISTRICT,           )    **PURSUANT TO 28 U.S.C. §1441(b)**
    and, DOES 1 through 65, inclusive,         )    **(FEDERAL QUESTION)**
14                                             )
                Defendants.                    )
15                                             )
                                               )
16

17          **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

18          **PLEASE TAKE NOTICE** that defendant SAN DIEGO UNIFIED PORT DISTRICT,

19  hereby removes to this court the state court action described below.

20          1.  On August 15, 2007, this action was commenced in the Superior Court of the

21  State of California in and for the County of San Diego, entitled Daniel Renard, Plaintiff, vs.

22  San Diego Unified Port District, Defendant, as Case No. 37-2007-00073093-CU-BC-CTL.

23  Plaintiff filed an amended summons and first amended verified complaint in this matter on

24  November 17, 2007.

25          2.      True and accurate copies of the amended summons and first amended verified

26  complaint are attached hereto as Exhibits "A" and "B", respectively, to this Notice.  Exhibits "A"

27  and "B" are, to the best of this defendant's knowledge, all the process, pleadings and orders

28  filed in the San Diego Superior Court case.  The first date upon which defendant San Diego

**ORIGINAL**

1  Unified Port District was served Exhibits "A" and "B" was November 19, 2007.

2      3.   This action is a civil action of which this court has original jurisdiction under 28

3  U.S.C. §1331, and is one which may be removed to this court by defendant pursuant to the

4  provisions of 28 U.S.C. §1441(b) in that plaintiff claims a violation of 33 C.F.R. §110.90 and

5  Section 1983 of Title 42 of the United States Code.

6      4.   Defendant will give written notice of the filing of this notice as required by 28

7  U.S.C. §1446(d).

8      5.   Defendant certifies that a copy of this notice will be filed with the clerk of the

9  Superior Court of California, County of San Diego, as required by 28 U.S.C. §1446(d).

10      WHEREFORE, defendant requests that this action proceed in this Court as an action

11  properly removed to it.

12  DATED: 12/17/07

13                              By: *Ellen Gross Miles*

14                              ELLEN GROSS MILES,
                                Deputy Port Attorney,
15                              Attorney for Defendant
                                SAN DIEGO UNIFIED PORT DISTRICT

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION          USDC CASE NO.

*handwritten: Case 347 W BLM* ... *Nunc Pro Tunc 12/19/07*

# SUMMONS *ON FIRST AMENDED COMPLAINT*
## (CITACION JUDICIAL)

SUM-100 cal

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SAN DIEGO UNIFIED PORT DISTRICT,
and, DOES 1 through 65, INCLUSIVE

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
CIVIL BUSINESS OFFICE 19

07 NOV 19  PM 3: 59

CLERK - SUPERIOR COURT
SAN DIEGO COUNTY, CA

NOV 19 2007

*Hand-Del - us*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DANIEL RENARD

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT COUNTY OF SAN DIEGO<br>330 W. BROADWAY<br>SAME<br>SAN DIEGO, CALIFORNIA 92101<br>HALL OF JUSTICE | CASE NUMBER:<br>*(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DANIEL RENARD                                           619-675-1692
P.O. BOX 6301
SAN DIEGO, CALIFORNIA 92166

DATE: NOV 19 2007                     Clerk, by _____, Deputy
*(Fecha)*                              *(Secretario)*                        *(Adjunto)*

B. Orihuela

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

1 | DANIEL RENARD
P.O. Box 6301
2 | San Diego, California 92166
Phone: 619-675-1692
3

4 | Plaintiff, In Pro Se

5

6

7

8 | THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SAN DIEGO

10 | HALL OF JUSTICE

11 | DANIEL RENARD

Case No. 37-2007-00073093-CU-BC-CTL

12 | Plaintiff,

FIRST AMENDED VERIFIED COMPLAINT:

13 | vs.

1. Enforcement of Settlement Agreement;
14 | SAN DIEGO UNIFIED PORT DISTRICT | 2. Breach of Written Contract;
and, DOES 1 through 65, INCLUSIVE | 3. Negligent Misrepresentation;
15 | | 4. Fraud & Deceit;
Defendants, | 5. Breach of Implied Covenant of Good
16 | | Faith and Fair Dealing;
| 6. Declaratory Relief
17

18

19 | COMES NOW, Plaintiff, DANIEL RENARD, and alleges against Defendants, SAN DIEGO

20 | UNIFIED PORT DISTRICT, and, DOES 1though 65 INCLUSIVE, as follows:

21 | 1. Plaintiff, DANIEL RENARD, is a disabled individual, and is, and at all times herein

22 | mentioned was, a resident of the County of San Diego, State of California, within the jurisdictional

23 | boundaries of this Court.

24 | 2. Defendants, SAN DIEGO UNIFIED PORT DISTRICT, is a public entity created as a

25 | public corporation by the California State Legislature to manage San Diego Harbor, and administer

26 | the public lands along San Diego Bay, within the jurisdictional boundaries of this Court.

27 | 3. Plaintiff is ignorant of the true names and capacities of the Defendant's sued herein as

28 | DOES, 1 through 65 , INCLUSIVE, and therefore sues these Defendant's by such fictitious names.

1    Plaintiff will amend this Complaint to show their true names and capacities when they have

2   been ascertained. Plaintiff is informed and believes, and upon such information and belief alleges

3   that each of the fictitiously named defendant's is responsible in some manner for the occurrences

4   herein alleged, and Plaintiff's damages were proximately caused by such Defendant's.

5    4. Plaintiff is informed and believes, and on that basis alleges that each of the fictitiously

6   named Defendant's were and are the agents, employees, or representatives of the other Defendant's

7   and acting in concert with the other.

8    **SUMMARY OF ALLEGATIONS**

9    5. Plaintiff is the owner /operator of vessels in San Diego Bay, and is disabled.

10    6. On or about December 02, 2003, Plaintiff and Defendants, SAN DIEGO UNIFIED PORT

11   DISTRICT, entered into a settlement agreement and release of claims, (hereinafter referred to as the

12   "AGREEMENT" arising from a civil action filed by Plaintiff against Defendants in the United

13   States District Court case No. 03 CV 1443 J (JFS), on August 23, 2003.

14    7. Contained in the Agreement were provisions granting Plaintiff a "disabled", (persons

15   with disabilities), permit to anchor his vessel in the "A-9""disabled" free anchorage area.

16    8. On or about June 06, 2006, the Board of Port Commissioners of the SAN DIEGO

17   UNIFIED PORT DISTRICT, voted to permanently eliminate the "A-9" anchorage, and revoke

18   Plaintiffs disabled permit, in clear violation of their Agreement with Plaintiff. (a true copy of the

19   Settlement Agreement and Release of Claims is attached hereto as "Exhibit A", and made a part of

20   this pleading.)

21    10. Notwithstanding the breach of covenants contained in the Agreement, the elimination

22   of the "A-9" anchorage is in direct violation with the Port Districts own "Port Master Plan", which

23   has been confirmed by the California State Coastal Commission. (See letter from Diana Lily, Coast

24   Planner for the California Coastal Commission dated: June 21, 2007 and attached hereto as "Exhibit

25   B", and made a part of this pleading.)

26    11. Moreover, Defendant's, and each of them, through the elimination of said anchorages

27   have been unlawfully seizing and impounding vessels in the absolute absence of procedural and/or,

28   substantive due process to the vessel owners, including but not limited to Plaintiffs own vessel.

- 2 -

12. Plaintiff is informed and believes, and upon such information and belief alleges that the SAN DIEGO UNIFIED PORT DISTRICT has a pattern practice and policy of seizing vessels

13. Plaintiff further alleges that such seizures are unlawful and in violation of current regulatory policies conveyed by the federal government to the United States Coast Guard pursuant to 33 CFR 110.90.

14. Additionally, pursuant to the Port Master Plan, such ordinances enacted by the Board of Port Commissioners are not, and do not take effect until publication in the Federal Register. Plaintiff is informed and believes, and upon such information and belief alleges that as of the date of production Defendants and each of them, have failed to publish their ordinances in the Federal Register. (See page 44 of the Port Master Plan, attached hereto as "Exhibit C", and made a part of this pleading.)

15. Defendant's practices as alleged herein are, and were, unfair, illegal, immoral, unethical and in violation of the law.

16. ·//

## FIRST CAUSE OF ACTION

### (Enforcement of Settlement Agreement)

17. Plaintiff realleges and incorporates by reference all of the Paragraphs as fully set forth above.

18. Plaintiff alleges that on or about June 06, 2006, Defendants, and each of them, violated their "Agreement" with Plaintiff by and through the total elimination of the "A-9" anchorage and revocation of Plaintiffs disabled permit which is expressly addressed, (page 1, ¶ 1), of the Agreement.

19. Plaintiff further alleges that as a proximate result of the Defendants', and each of their, breach of Settlement Agreement, Plaintiff has been damaged in that he has had to incur legal fees and cost for enforcement, and for related costs, and mitigation expenses, in an amount which is presently unknown.

WHEREFORE, Plaintiff prays judgment against Defendants', and each of them, as hereinafter set forth.

**FIRST CAUSE OF ACTION**

**(Enforcement of Settlement Agreement)**

12. Plaintiff realleges and incorporates by reference all of the Paragraphs as fully set forth above.

13. Plaintiff alleges that on or about June 06, 2006, Defendants, and each of them, violated their "Agreement" with Plaintiff by and through the total elimination of the "A-9" anchorage and revocation of Plaintiffs disabled permit which is expressly addressed, (page 1, ¶ 1), of the Agreement.

14. Plaintiff further alleges that as a proximate result of the Defendants', and each of their, breach of Settlement Agreement, Plaintiff has been damaged in that he has had to incur legal fees and cost for enforcement, and for related costs, and mitigation expenses, in an amount which is presently unknown.

WHEREFORE, Plaintiff prays judgment against Defendants', and each of them, as hereinafter set forth.

**SECOND CAUSE OF ACTION**

_____**(Breach of Written Contract)**

15. Plaintiff realleges and incorporates by reference all of the Paragraphs as fully set forth above.

16. On or about December 02, 2003, Plaintiff entered into a written agreement with Defendants, and each of them, which set terms performed in full or in part by the parties until Defendants material breach on June 06, 2006 as described above.

17. Under the terms of the contract, Plaintiff was to have been issued a disabled permit and allowed long term free anchoring in the "A-9" anchorage. Additionally, Plaintiff was to have complied with all requirements of the "A-9" anchorage, (Please see "Exhibit A" attached hereto and made a part of this pleading).

18. Pursuant to the written contract, Plaintiff at all times described herein satisfied his duties performed all conditions, covenants, and promises under the written Agreement on his part to be performed.

1    19. As a direct result of Defendants, and each of their, breach of the written Agreement,

2    Plaintiff has been damaged in that he has had to incur legal fees and cost, and for related costs, and

3    mitigation expenses, in an amount which is presently unknown.

4    WHEREFORE, Plaintiff prays judgment against Defendants', and each of them, as

5    hereinafter set forth.

6    ### THIRD CAUSE OF ACTION

7    ### (Negligent Misrepresentation)

8    20. Plaintiff realleges and incorporates by reference all of the Paragraphs as fully set forth

9    above.

10   21. On or about December 2, 2003, Plaintiff, Daniel Renard and Defendants, San Diego

11   Unified Port District, through their attorney of record, Ellen Gross Miles, entered into a settlement

12   agreement and release of claims regarding a previous action filed by Plaintiff against Defendants

13   in the United States District Court, Case No. 03 CV 1443 J (JFS).

14   22. Pursuant to the above mentioned settlement agreement, Plaintiff agreed to dismiss its

15   action against Defendants in consideration for an anchoring permit in the A-9 anchorage in San

16   Diego Bay, allowing Plaintiff free long term anchoring in said anchorage.

17   23. Plaintiff alleges that Ellen Gross Miles, Attorney for Defendants, and the Board of Port

18   Commissioners, negligently misrepresented that the A-9 anchorage was to remain in existence and

19   permit able when she was completely aware that the Board of Port Commissioners for Defendant,

20   San Diego Unified Port District were planning on amending the existing law which would effectively

21   eliminate the "A-9" anchorage and which would render Defendants' agreement with Plaintiff useless

22   and without effect.

23   24. Defendants' attorney of record, Ellen Gross Miles, negligently misrepresented, and

24   caused Plaintiff to believe that the "A-9" anchorage was to going to continue to remain in existence

25   at the time she entered into contract with Plaintiff on behalf of Defendants, and that by and through

26   such existence Defendants would fulfill its obligation under the contract. But for their negligence,

27   Ellen Gross Miles, and the Board of Port Commissioners for Defendants, induced Plaintiff into

28   entering into said contract.

5

1      25. Plaintiff relied upon the representations of Ellen Gross Miles, in connection with the

2 negotiation of Plaintiffs Agreement with Defendants, and each of them, regarding Plaintiffs right to

3 long term free anchoring in the "A-9" anchorage and thereon dismissed its prior complaint against

4 Defendants, with prejudice.

5      26. Plaintiff requests all damages reasonably incurred which exceed the maximum

6 jurisdiction of this Court incurred from all covenants and conditions contained in its contract with

7 Defendants, and each of them, made by Defendants to Plaintiff to his detriment.

8      WHEREFORE, Plaintiff prays judgment against Defendants', and each of them, as

9 hereinafter set forth.

10                    **FOURTH CAUSE OF ACTION**

11 _____**(Fraud & Deceit)**

12      27. Plaintiff realleges and incorporates by reference all of the Paragraphs as fully set forth

13 above.

14      25. On December 02, 2003, in San Diego California , the Board of Port Commissioners for

15 Defendants, San Diego Unified Port District, by and through their attorney, Ellen Gross Miles,

16 entered into a Settlement Agreement and Release of Claims, in which Defendants, and each of them,

17 agreed to issue a disabled permit to Plaintiff and grant Plaintiff the right to long-term free anchoring

18 in the "A-9" anchorage of San Diego Bay.

19      26. Plaintiff materially relied on the representations of Defendants attorney, Ellen Gross

20 Miles, and its Board of Port Commissioners, that the A-9 anchorage was going to continue to remain

21 in existence, and that Plaintiff would be granted the right to long term free anchoring as agreed.

22 Upon such representations, Plaintiff dismissed its lawsuit against Defendants "with prejudice" .

23      27. Plaintiff is informed and believes, and upon such information and belief alleges that, the

24 true facts were that Ellen Gross Miles, and the Board of Port Commissioners, were fully aware at

25 the time they entered into Agreement with Plaintiff, that they were planning to eliminate the

26 anchorage which they agreed to issue a permit for, rendering their contract with Plaintiff useless.

27 /././

28 /././

-6-
6

28. Plaintiff further alleges that the entire agreement and the intentional concealment of facts, made by Ellen Gross Miles, and the Board of Port Commissioners, was done with the intent of inducing Plaintiff dismiss its prior complaint with Defendant, with prejudice, and manipulate Plaintiff into agreeing to a worthless contract.

29. At the time the agreement was made and at the time Plaintiff took the actions herein described, Plaintiff was ignorant of Defendants', secret intention to eliminate the A-9 Anchorage. Plaintiff could not, in the exercise of reasonable diligence, have discovered Defendants' secret intentions based upon the promises and representations made by Ellen Gross Miles and the Board of Port Commissioners. If Plaintiff had known of the actual intentions of Defendants, Plaintiff would not have taken such action.

30. The aforementioned conduct of Ellen Gross Miles and the Board of Port Commissioners, to wit, making entirely false representations regarding their intention of maintaining the "A-9" anchorage, attempting to conceal their lies, all of which directly resulted in Plaintiff's damages constitutes an intentional misrepresentation, deceit, an/or, concealment of material facts known to Defendants', and each of them, with the intention of depriving Plaintiff of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiff prays judgment against Defendants', and each of them, as hereinafter set forth.

## FIFTH CAUSE OF ACTION

**(Breach of Covenant of Good Faith and Fair Dealing)**

31. Plaintiff realleges and incorporates by reference all of the Paragraphs as fully set forth above.

32. As set forth above, Plaintiff did dismiss its prior lawsuit against Defendants, "with prejudice, and only did so based upon the representations of Defendants, and each of them, that he would be issued a disabled permit and thereon allowed long-term free anchoring and safe harbor, in the "A-9" anchorage in San Diego Bay.

-6-

7

33. Notwithstanding, on June 06, 2006, the Board of Port Commissioners of the SAN DIEGO UNIFIED PORT DISTRICT, elected to permanently eliminate the "A-9", anchorage and revoke Plaintiffs' permit allowing him the right to long-term free anchoring in said anchorage.

34. Through such actions, Defendants, and each of them, have constructively failed to cooperate with Plaintiff in the performance of all contacts, and thereby breached the implied covenant of good faith and fair dealing, respectively.

35. Defendants, and each of them, failed to use their best effort to fulfill their obligations to Plaintiff and/or to give Plaintiff any reasonable alternative to fulfill their contractual obligation.

36. As a direct proximate and consequential result of Defendants acts, Plaintiff has been damaged in loss of his home, future profits, interest, cost, legal fees and cost, and for related costs, and mitigation expenses, in an amount which is presently unknown.

WHEREFORE, Plaintiff prays judgment against Defendants', and each of them, as hereinafter set forth.

### SIXTH CAUSE OF ACTION
_____(Declaratory Relief)

37. Plaintiff realleges and incorporates by reference all of the Paragraphs as fully set forth above.

38. An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them in that Plaintiff contends and Defendants deny the following:

a) Plaintiff contends that the Settlement Agreement is valid and enforceable;

b) Defendant contends that the Settlement Agreement in invalid and non enforceable;

c) Plaintiff desires a judicial determination of the respective rights and duties of Plaintiff, on one hand and Defendants, on the other hand, with respect to the rights of the parties under the Agreement, and in particular, the validity or invalidity of the Agreement. Such Declaration is necessary and appropriate in order that Plaintiff may ascertain his rights and duties with respect to the Agreement and his option rights, if any, under its Agreement with San Diego Unified Port District.

/././

39.  Plaintiff desires a judicial determination of the respective rights and duties of Plaintiff, on one hand and Defendants, on the other hand, with respect to 33 CFR 110. (a true copy of the excerpt of the Federal Register is attached hereto as "Exhibit D", and made a part of this pleading.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

a)    For special and general damages according to proof at the time of trial;

b)    For exemplary and punitive damages in an amount deemed sufficient to punish Defendants;

c)    For a Judicial Determination of the rights and duties of each party herein pursuant to settlement agreement;

d)    For attorneys fees and cost of suit incurred herein; and,

e)    For any and all such further relief as the Court may deem just and proper.

Dated: 11-19-07

By: _____

DANIEL RENARD
Plaintiff / In Pro Per

-8-
9

RENARD vs. SAN DIEGO UNIFIED PORT DISTRICT FIRST AMENDED COMPLAINT
CASE NO. 37-2007-00073093-CU-BC-CTL
PAGE NO. EIGHT

# VERIFICATION

STATE OF CALIFORNIA,                          Case No. 37-2007-00073093-CU-BC-CTL

                    :§§                          RENARD v. SAN DIEGO UNIFIED PORT DIST.

COUNTY OF SAN DIEGO:

    I, DANIEL RENARD,  if called upon to testify as a witness, would and competently do so of my own personal knowledge and do now declare as follows:

    I am a party to this action. I have read the foregoing document, entitled First Amended Verified Complaint for 1) Enforcement of Settlement Agreement; 2) Breach of Written Contract; 3) Negligent Misrepresentation; 4) Fraud & Deceit; 5) Breach of Implied Covenant of Good Faith and Fair Dealing, and 6) Declaratory Relief,  and know its contents. The matters stated are true of my own knowledge and belief, and as to those matters I believe them to be true.

    I hereby declare under penalty of perjury, under the laws of the state of California, that the foregoing is true and correct.

Date: _11-18-07_                          By: _____

                                              Daniel Renard

# "EXHIBIT A"

2)

# SETTLEMENT AGREEMENT AND
# RELEASE OF ALL CLAIMS

For the consideration of the issuance of a disabled permit for the San Diego Unified Port District's A-9 Anchorage, issued to the undersigned, plaintiff Daniel Renard (hereafter the "undersigned"), releases and forever discharges SAN DIEGO UNIFIED PORT DISTRICT, its Board of Port Commissioners, officers, agents and employees (all hereinafter singly and collectively referred to as "the parties hereby released"), from any and all matters, claims, liens and suits of every kind whatsoever which the undersigned now has, ever had or hereafter will have against any of the parties hereby released, including (but without limiting the generality of the foregoing) any known or unknown personal injuries, property damage, loss, cost or expenses of every nature whatsoever resulting from the first amended complaint filed by the undersigned in the case of *Daniel Renard v. San Diego Unified Port District, et al.*, United States District Court Case No. 03 CV 1443 J (JFS) on August 26, 2003.

In further consideration, the undersigned agrees as follows:

1) The undersigned will comply with all requirements of the A-9 Anchorage Permit issued to them, including but not limited to: a) Only public dinghy docks and landings may be used by the undersigned, such as that found at the foot of Laurel Street or the dock northeast of the USCG Air Station; b) The beaching of vessels or parking a vehicle on any leased property surrounding the anchorage is prohibited; c) vessels must anchor within the A-9 anchorage boundaries; and, d) the pump out facility and docks at the Sunroad Marina are part of a private, leased facility and may not be used without the permission of the dock master; and e) any vessel anchored in violation of any provision of these restrictions would be subject to permit suspension or revocation and/or removal and storage of the vessel pursuant to San Diego Unified Port District Code Section 8.25(a).

2) The undersigned acknowledges that he shall not anchor in any portion of San Diego Bay without a permit as set forth in the San Diego Unified Port District Code.

3) The undersigned agrees to be law abiding, and to comply with all applicable federal, state and local laws, including provisions of the San Diego Unified Port District Code.

4) The undersigned shall file with the court a dismissal of the first amended complaint with prejudice, in its entirety.

The undersigned hereby expressly waives all rights under Section 1542 of the California Civil Code, which reads as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which is known by him must have materially affected his settlement with the debtor.

The undersigned hereby understands and represents that reliance is placed wholly upon his own judgment, belief and knowledge as to the nature, extent and duration of said injuries

and damage; that no statement with regard thereto made by or on behalf of any of the parties hereby released has in any way influenced him in making this settlement; that the foregoing consideration is received in settlement and compromise of a disputed claim and is not an admission of any liability whatsoever by any of the parties hereby released; that this release contains the entire agreement between it and the parties hereby released; and, that the terms hereof are contractual and are not mere recitals.

**THE UNDERSIGNED HEREBY DECLARES THAT HE HAS CAREFULLY READ AND FULLY UNDERSTOOD THIS RELEASE PRIOR TO SIGNING IT.**

DANIEL RENARD

SIGNED this _2_ day of December, 2003

**"EXHIBIT B"**

STATE OF CALIFORNIA -- THE RESOURCES AGENCY                                                                ARNOLD SCHWARZENEGGER, Governor

# CALIFORNIA COASTAL COMMISSION

SAN DIEGO AREA
7575 METROPOLITAN DRIVE, SUITE 103
SAN DIEGO, CA 92108-4421
(619) 767-2370



June 21, 2007

William Briggs
San Diego Unified Port District
P.O. Box 120488
San Diego, CA 92112-0488

Re:  Changes to the A-8 Anchorage

Dear Mr. Briggs:

As we have discussed recently, Commission staff have been contacted by members of the
public regarding changes been made at the A-8 Anchorage.  As you know, the certified
Port Master Plan (PMP) states regarding Anchorage A-8 "[a]pproximately 250 vessels at
single swing point anchorage using vessel ground tackle can be accommodated; however,
use shall be incremental, the first phase to provide for up to 100 vessels, with any
additional 100 increments to be subject to further public hearings and consultations with
District member cities.  About 30 percent of the spaces are to be reserved for short-term
use by transient ocean cruising vessels."

Staff understanding is that in the past, the Port has made the A-8 Anchorage available to
those boaters who want to anchor their vessels at no cost for an unlimited period of time.
However, the Board of Port Commissioners have recently voted to eliminate the A-8
Anchorage as a long-term unlimited anchorage, and have adopted ordinance changes
involving new permit regulations, fees, and a boater buyout program for the 40 vessels
currently at the anchorage.  Boaters who do not take the buyout can remain at the
anchorage, if they meet the permit requirements, at least until new moorings (not yet
identified) are available for rent in the future.  Presumably, any boaters remaining at that
time would be required to leave.  Boaters may still drop anchor in the A-8 Anchorage to
fish, have lunch, watch the sunset, etc., without the need for a permit, but overnight stays
would be prohibited, and no new permits are being or will be issued for the anchorage.

Commission staff is concerned that the A-8 Anchorage is not currently operating as
required by the PMP, and it appears the recent adoption of new ordinance(s) will
continue or increase the inconsistencies.  Absent a PMP Amendment, the anchorage
should continue to be made available to approximately 100 vessels, with approximately
33 spaces reserved for short-term cruisers.  User fees and permit requirements that
specify duration of stay are within the management and regulatory authority of the Port
District, but requirements should be related to environmental, safety and health issues
that do not unreasonably deter use of the anchorage.

The anchorage does not currently provide space for 100 vessels and permits for short-
term cruisers are not being issued.  The operational changes recently undertaken by the
Port are clearly designed to phase out and eventually eliminate anchoring at A-8.  These

June 21, 2007
Page 2

past and on-going changes to the A-8 Anchorage are not consistent with the text of the master plan and should be processed as a Port Master Plan Amendment prior to implementation of the changes. Future changes to moorings that are within the scope of a revised PMP might still require issuance of a coastal development permit. For example, physically removing mooring facilities, or reducing the availability of spaces, would be a change in intensity of use that would require a coastal development permit appealable to the Coastal Commission.

Recreational boating and lower-cost visitor and recreational facilities such as short-term anchorages are strongly supported under the Coastal Act. In our phone conversations, you have indicated that the Port plans on converting the anchorage to special event anchoring. An analysis of the impact the elimination of cruiser spaces at A-8 would have on the availability and affordability of short-term boater accommodations in the bay should be submitted with the Port Master Plan Amendment application. In addition, the Port should address the historical use of the anchorage and what alternative remain for long-term users of the facility.

Thank you for you attention to this matter, and please let me know if you have any questions.

Sincerely,

Diana Lilly
Coastal Planner

cc:    Deborah Lee
       Sherilyn Sarb
       Michael Patrick Conelly
       Daniel Renard

(G:\San Diego\DIANA\PORT\A-9 Anchorage ltr.doc)

**"EXHIBIT C"**

shallow and too narrow to accommodate larger ships). Boat channels will be kept clear of encroaching water or land uses, which would deter waterborne circulation. These channels serve the navigation system in a manner similar to that provided by streets in a land-based circulation system. Boat corridors in 1978 provided for a fleet of more than 4000 pleasure craft permanently moored on the waters of the bay and provided corridors from the public launching ramps that launched thousands of pleasure craft out of almost 33,000 registered boats in San Diego County. New boat navigation corridors will be required to serve new marina developments. Maintenance dredging and improvements to existing channels, as required, are to be conducted.

 **Small Craft Mooring and Anchorage Areas** have been planned to facilitate the retention and orderly management and development of a variety of functional, aesthetically pleasing facilities in carefully selected sites. The intent of the plan is to prohibit long term permanent or semi-permanent indiscriminate anchoring through- out the Bay in a manner so as not to interfere with short term uses of the bay for fishing, sailing, and other social and recreational activity, including the rafting of vessels. Long term anchoring and mooring shall be limited to designated anchorages under local control of the jurisdictional authority of the Port District, U. S. Navy, and the State Department of Parks and Recreation. Long term users are encouraged to use marinas where there are secure moorings and shoreside support facilities which have been provided by private investors. Changes to Federal regulations pertaining to anchorages can be accomplished by complying with the established procedure which permits the new regulations to go into effect after publication in the Federal Register.

The use or development of the proposed anchorages shall be at the discretion of the U.S. Navy (A-6), the State Department of Parks and Recreation (A-7), and the Port District (A-1 to A-5 and A-8). In the Port District's anchorages, the actual operation of the anchorage shall be conducted by the Port District or under a lease agreement to other governmental agency or to a private operator. Port funds or possibly private development monies are to be expended for the planning, construction and regulation of anchorages and moorings for use by vessels which are solely or primarily used for commerce, navigation, fisheries and recreation. The use of bay water areas for residential use, involving living aboard vessels as a primary place of residence, is discouraged as a matter of policy in accordance with state law.

Improvements and the level of service in anchorages are functional but greatly reduced from those provided in marinas. Anchorages are not as secure as marinas for keeping vessels at mooring station, require more water area per vessel stored, and do not have dockside utilities and access. Shoreside facilities for anchorages range widely, from natural shoreline to dinghy float, and may or may not include: dock and ramp; night lighting; potable water supply; disposal stations for trash, petroleum products and sewage; public telephone; limited automobile parking, and restrooms. The safety and security of vessels at anchor remain the responsibility of the vessel owner or operator who must keep apprised of weather conditions and storm warnings and take the necessary precautions to insure the safety of their vessels, other craft, and harbor improvements. The lower level of service and facilities in anchorages is frequently reflected in lower user fees and sometimes public subsidies.

In the Port District's jurisdiction, the primary basis for the management and regulation of intensively used anchorages will be by the establishment of a lease relationship with user fees and permits which specify duration of stay. Anchorages are to be made available to seaworthy, self-propelled vessels which are subject to periodic inspection that insures proper moorings, adequate fire fighting equipment, approved marine sanitation devices, and registration or documentation of vessel ownership. The management of anchorages is also to be conducted so as to maintain a program of flotsam and debris clean-up, regularly monitored water quality, and controls on overboard discharges.

(041196)

"EXHIBIT D"

## Environment

The Coast Guard considered the environmental impact of this rule and concluded that under paragraph 2.B.2 of Commandant Instruction M16475.1B, it will have no significant environmental impact and it is categorically excluded from further environmental documentation. A Categorical Exclusion Determination and environmental analysis checklist will be available for inspection and copying in the docket to be maintained by the local Coast Guard Marine Safety Office.

## List of Subjects in 33 CFR Part 100

Regattas and Marine parades.

## Regulation

For the reasons set out in the preamble, the Coast Guard amends 33 CFR part 100, as follows:

## PART 100 [AMENDED]

1. The authority citation for part 100 continues to read as follows:

**Authority:** 33 U.S.C. 1233 through 1236; 49 CFR 1.46; 33 CFR 100.35.

2. In § 100.1101, paragraph (a) is revised, and Table 1 is amended by adding an entry for the U.S. National Waterski Racing Championship immediately following the last entry, to read as follows:

### § 100.1101  Southern California annual marine events.

(a) Special local regulations will be established for the events listed in Table 1. Further information on exact dates, times, details concerning the number and type of participants and an exact geographical description of the areas are published by the Eleventh Coast Guard District in the Local Notice to Mariners at least 20 days prior to each event. To be placed on the mailing list contact: Commander (Pow), Eleventh Coast Guard District, Coast Guard Island, Building 50–6, Alameda, CA 94501–5100.

\*      \*      \*      \*      \*

Table 1

US National Waterski Racing Championship

Sponsor: U.S. National Waterski Racing Association

Date: First Friday of October every year, lasting a total of 3 days (including the first Friday of October).

Location: Mission Bay, San Diego, California, from Government Island south to Ski Beach.

Dated: March 20, 1998.

**J. C. Card,**
*Vice Admiral, U.S. Coast Guard, Commander, Eleventh Coast Guard District.*

[FR Doc. 98–8958 Filed 4–3–98; 8:45 am]
**BILLING CODE 4910-15-M**

## DEPARTMENT OF TRANSPORTATION

### Coast Guard

**33 CFR Part 100**

**[CGD11–98–002]**

**RIN 2115–AE46**

### Special Local Regulations; Parker Enduro

**AGENCY:** Coast Guard, DOT.

**ACTION:** Implementation of rule.

**SUMMARY:** This document implements 33 CFR 100.1102, "Marine Events on the Colorado River, between Davis Dam (Bullhead City, Arizona) and Headgate Dam (Parker, Arizona)," for the Parker Enduro hydroplane racing boat event. This event consists of hydroplane racing using high-speed powerboats with a length of 16 to 23 feet. These regulations will be effective on that portion of Lake Moovalya, Parker, Arizona, between miles 179 and 185 of the Colorado River (between the Roadrunner Resort and Headgate Dam). Implementation of 33 CFR 100.1102 is necessary to control vessel traffic in the regulated areas during the event to ensure the safety of participants and spectators.

Pursuant to 33 CFR 100.1102(c)(3), Commander, Coast Guard Activities San Diego, is designated Patrol Commander for this event; he has the authority to delegate this responsibility to any commissioned, warrant, or petty officer of the Coast Guard.

**DATES:** This section is effective from 8 a.m. PDT, until 6 p.m. PDT, on May 2, 1998, and from 8 a.m. PDT, until 6 p.m. PDT, on May 3, 1998.

**FOR FURTHER INFORMATION CONTACT:** QMC Michael C. Claeys, U.S. Coast Guard Activities San Diego, California; Tel: (619) 683–6309.

### Discussion of Implementation

The Packer Enduro, sponsored by the Parker Area Chamber of Commerce, is

scheduled to occur on May 2–3, 1998. This annual event, usually scheduled to occur in early March, is expected to again be held in March in subsequent years. These Special Local Regulations permit Coast Guard control of vessel traffic in order to ensure the safety of spectator and participant vessels. In accordance with the regulations in 33 CFR 100.1102, no persons or vessels shall block, anchor, or loiter in the regulated area; nor shall any person or vessel transit through the regulated area, or otherwise impede the transit of participant or official patrol vessels in the regulated area, unless cleared for such entry by or through an official patrol vessel acting on behalf of the Patrol Commander.

Dated: March 20, 1998.

**J.C. Card,**
*Vice Admiral, U.S. Coast Guard, Commander, Eleventh Coast Guard District.*

[FR Doc. 98–8957 Filed 4–3–98; 8:45 am]
**BILLING CODE 4910-15-M**

## DEPARTMENT OF TRANSPORTATION

### Coast Guard

**33 CFR Part 110**

**[CGD11–97–007]**

**RIN 2115–AA98**

### Anchorage Regulations: San Diego Harbor, CA

**AGENCY:** Coast Guard, DOT.

**ACTION:** Final rule.

**SUMMARY:** The Coast Guard hereby establishes several special anchorages in San Diego Bay, California. A "special anchorage" is an area on the water where vessels less than 20 meters (approximately 65 feet) in length are allowed to anchor without displaying navigation lights which are otherwise required for anchored vessels under Rule 30 of the Inland Navigational Rules, codified at 33 U.S.C. 2030. The intended effect of these special anchorages is to reduce the risk of vessel collisions within San Diego Bay by specifying more special anchorage areas which will provide designated sites for vessels less than 20 meters in length.

**DATES:** This rule becomes effective May 6, 1998.

**FOR FURTHER INFORMATION CONTACT:**
Lieutenant Mike Arguelles, Marine
Safety Office, San Diego, (619) 683–
6484, or Mike Van Houten, USCG,
Pacific Aids to Navigation and
Waterways Management Branch,
Eleventh Coast Guard District, (510)
437–2984.

**SUPPLEMENTARY INFORMATION:**

**Regulatory History**

On November 25, 1997, the Coast
Guard published a notice of proposed
rulemaking (NPRM) for this regulation
in the Federal Register [62 FR 62734].
The comment period ended January 26,
1998. The Coast Guard received no
comments. A public hearing was not
requested and no hearing was held.

**Background and Purpose**

A *special anchorage* is an area on the
water in which vessels less than 20
meters (approximately 65 feet) in length
are allowed to anchor without
displaying navigation lights. Such lights
are otherwise required for anchored
vessels under Rule 30 of the Inland
Navigational Rules, codified at 33 U.S.C.
2030. This rule establishes 7 new
special anchorage areas, and modifies 4
special anchorage areas already in
existence, in San Diego Harbor, San
Diego, California.

**Discussion of Regulation**

The Coast Guard establishes 7 new
special anchorage areas (A–1a, A–1b, A–
1c, A–4, A–6, A–8, & A–9), and modifies
the 4 special anchorage areas already in
existence (A–1, A–2, A–3, & A–5), in
San Diego Harbor, San Diego, California,
as follows:

(A–1, A–1a, A–1b, A–1c) Shelter
Island Moorings, North San Diego Bay,
approximately 75 yards off shore and
along Shelter Island (for A–1, minor
corrections to some of the coordinates
describing the corner points of the
special anchorage area),

(A–2 America's Cup Harbor, North
San Diego Bay, in the area known as
Commercial Basin (minor corrections to
some of the coordinates describing the
corner points of the special anchorage
area),

(A–3) Laurel Street Roadstead
Moorings, North San Diego Bay, east of
the Coast Guard Activities installation
(minor corrections to some of the
coordinates describing the corner points
of the special anchorage area),

(A–4) Bay Bridge Roadstead
Moorings, Central San Diego Bay, at the
northwest end of the Coronado Bridge,

(A–5) Glorietta Bay Anchorage,
Central San Diego Bay, across the bay
from Naval Amphibious Base (minor
corrections to some of the coordinates

describing the corner points of the
special anchorage area),

(A–6) Fiddlers Cove, South San Diego
Bay, just south of the Naval Amphibious
Base,

(A–8) Sweetwater Anchorage, South
San Diego Bay, west of 24th Street,
Marine Terminal, and

(A–9) Cruiser Anchorage, North San
Diego Bay, west of the Coast Guard
Activities installation.

The primary users of these anchorages
are recreational vessels, with the
majority of them being long term users.
Some of the anchorages are depicted on
local charts, while all of them use buoys
to delineate their boundaries. By
establishing these areas as special
anchorages, the requirement of
displaying anchor lights and day shapes
will be removed for vessels less than 20
meters in length.

**Discussion of Comments**

No comments were received.

**Regulatory Evaluation**

This rule is not a significant
regulatory action under section 3(f) of
Executive Order 12866 and does not
require an assessment of potential costs
and benefits under section 6(a)(3) of that
order. It has been exempted from review
by the Office of Management and
Budget under that order.

I is not significant under the
regulatory policies and procedures of
the Department of Transportation (DOT)
(44 FR 11040, February 26, 1979). The
Coast Guard expects the economic
impact of this rule to be so minimal that
a full Regulatory Evaluation under
paragraph 10(e) of the regulatory
policies and procedures of DOT is
unnecessary. This rule will impose no
cost on vessel operators, it will have
minimal impact on vessel traffic, and
will provide more options to vessels
desiring to anchor in San Diego Bay.

**Small Entities**

Under 5 U.S.C. 601 *et seq.*, known as
the Regulatory Flexibility Act, the Coast
Guard must consider whether this rule
will have a significant economic impact
on a substantial number of small
entities. *Small Entities* include
independently owned and operated
small businesses that are not dominant
in their field and that otherwise qualify
as "small business concerns" under
section 3 of the Small Business Act (15
U.S.C. 632). Since the impact of this
rule is expected to be minimal, the
Coast Guard certifies that 5 U.S.C.
605(b), that this rule will not have a
significant economic impact on a
substantial number of small entities.

**Collection of Information**

This rule imposes no collection of
information requirements under the
Paperwork Reduction Act.

**Federalism**

This rule has been analyzed in
accordance with the principles and
criteria contained in Executive Order
12612, and it has been determined that
the rule making does not have sufficient
federalism implications to warrant the
preparation of a Federalism Assessment.

**Environment**

This rule has been reviewed by the
Coast Guard and determined to be
categorically excluded from further
environmental documentation in
accordance with section 2.B.2 of
Commandant Instruction M16475.1B. A
Categorical Exclusion Determination
and Environmental Analysis Checklist
will be available for inspection and
copying in the docket to be maintained
at the local Coast Guard Marine Safety
Office.

**List of Subjects in 33 CFR Part 110**

Anchorage grounds.

**Regulation**

In consideration of the foregoing, the
Coast Guard amends part 110 of Title
33, Code of Federal Regulations as
follows:

**PART 110—[AMENDED]**

1. The authority citation for part 110
continues to read as follows:

**Authority:** 33 U.S.C. 471, 1221 through
1236, 2030, 2035, 2071; 49 CFR 1.46 and 33
CFR 1.05–1(g).

1. Section 110.90 is revised to read as
follows:

**§ 110.90   San Diego Harbor, California.**

(a) *Area A–1.* In North San Diego Bay,
the Shelter Island Yacht Basin
Anchorage, the water area enclosed by
a line beginning at latitude 32°42'56.7"
N., longitude 117°13'47.1" W.; thence
southwesterly to latitude 32°42'53.6" N.,
longitude 117°13'51.3" W.; thence
northwesterly to latitude 32°43'01.3" N.,
longitude 117°13'59.1" W.; thence
northeasterly to latitude 32°43'02.6" N.,
longitude 117°13'55.5" W.; thence
southeasterly to latitude 32°42'59.8" N.,
longitude 117°13'50.4" W.; thence
southeasterly to the point of beginning.

(b) *Area A–1a.* In North San Diego
Bay, the Shelter Island Roadstead
Anchorage east of Shelter Island, the
water area 55 feet either side of a line
beginning at latitude 32°42'33.6" N.,
longitude 117°13'48.3" W.; thence

northeasterly to latitude 32°42′36.0″ N., longitude 117°13′45.1″ W.

(c) *Area A–1b.* The water area off Shelter Island's eastern shore, 210 feet shoreward of a line beginning at latitude 32°42′43.9″ N., longitude 117°13′34.3″ W.; thence northeasterly to latitude 32°42′52.8″ N., longitude 117°13′22.4″ W.

(d) *Area A–1c.* The water area off Shelter Island's eastern shore, 210 feet shoreward of a line beginning at latitude 32°42′55.0″ N., longitude 117°13′19.4″ W.; thence northeasterly to latitude 32°43′03.5″ N., longitude 117°13′07.6″ W.

(e) *Area A–2.* In North San Diego Bay, the America's Cup Harbor Anchorage, the water area enclosed by a line beginning at latitude 32°43′13.7″ N, longitude 117°13′23.8″ W; thence northeasterly to latitude 32°43′16.7″ N., longitude 117°13′16.4″ W.; thence northwesterly to latitude 32°43′22.6″ N., longitude 117°13′25.8″ W.; thence westerly to latitude 32°43′22.5″ N., longitude 117°13′29.6″ W.; thence southwesterly to latitude 32°43′19.0″ N., longitude 117°13′32.6″ W.; thence southeasterly to the point of beginning.

(f) *Area A–3.* In North San Diego Bay, the Laurel Street Roadstead Anchorage, the water area enclosed by a line beginning at latitude 32°43′30.5″ N., longitude 117°10′28.5″ W.; thence southwesterly to latitude 32°43′29.8″ N., longitude 117°10′34.2″ W.; thence southwesterly to latitude 32°43′25.8″ N., longitude 117°10′36.1″ W.; thence southerly to latitude 32°43′20.2″ N., longitude 117°10′36.1″ W.; thence westerly to latitude 32°43′20.2″ N., longitude 117°10′52.9″ W.; thence northeasterly to 32°43′29.8″ N., longitude 117°10′48.0″ W., thence northeasterly following a line parallel to, and 200 feet bayward of, the shoreline of San Diego Bay adjoining Harbor Drive to the point of beginning.

(g) *Area A–4.* In Central San Diego Bay, the Bay Bridge Roadstead Anchorage, the water area enclosed by a line beginning at latitude 32°41′32.1″ N., longitude 117°09′43.1″ W.; thence southwesterly to latitude 32°41′19.1″ N., longitude 117°09′46.1″ W.; thence southeasterly to latitude 32°41′17.8″ N., longitude 117°09′44.3″ W.; thence southeasterly to latitude 32°41′14.9″ N., longitude 117°09′37.9″ W.; thence northeasterly to latitude 32°41′26.9″ N., longitude 117°09′35.1″ W., thence southwesterly to the point of beginning.

(h) *Area A–5.* In Central San Diego Bay, the Glorietta Bay Anchorage, the water area enclosed by a line beginning at latitude 32°40′42.2″ N., longitude 117°10′03.1″ W.; thence southwesterly to latitude 32°40′41.2″ N., longitude

117°10′06.6″ W.; thence northwesterly to latitude 32°40′46.2″ N., longitude 117°10′15.6″ W.; thence northeasterly to latitude 32°40′46.7″ N., longitude 117°10′14.1″ W.; thence southeasterly to the point of beginning.

(i) *Area A–6.* In Fiddler's Cove, the water enclosed by a line beginning at latitude 32°39′10.4″ N., longitude 117°08′49.4″ W.; thence northwesterly to latitude 32°39′14.9″ N., longitude 117°08′51.8″ W.; thence northeasterly to latitude 32°39′17.6″ N., longitude 117°08′47.5″ W.; thence northwesterly to latitude 32°39′19.8″ N., longitude 117°08′48.8″ W.; thence northeasterly to latitude 32°39′24.4″ N., longitude 117°08′41.4″ W.; thence southeasterly to latitude 32°39′15.7″N., longitude 117°08′36.0″ W.; thence southwesterly to the point of beginning.

**Note:** This area is located on Federal property owned by the United States Navy, and it is reserved for active duty military, their dependents, retirees, and DOD employees only.

(j) *Area A–8.* In South San Diego Bay, the Sweetwater Anchorage, the water enclosed by a line beginning at latitude 32°39′12.2″ N., longitude 117°07′45.1″ W.; thence easterly to latitude 32°39′12.2″ N., longitude 117°07′30.1″ W.; thence southerly to latitude 32°38′45.2″ N., longitude 117°07′30.1″ W.; thence westerly to latitude 32°38′45.2″ N., longitude 117°07′45.1″ W.; thence northerly to the point of beginning.

(k) *Area A–9.* In North San Diego Bay, the Cruiser Anchorage, the water enclosed by a line beginning at latitude 32°43′35.9″ N., longitude 117°11′06.2″ W.; thence southwesterly to latitude 32°43′31.5″ N., longitude 117°11′13.2″ W.; thence southeasterly to latitude 32°43′28.9″ N., longitude 117°11′11.0″ W.; thence southeasterly to latitude 32°43′25.9″ N., longitude 117°11′07.7″ W.; thence northeasterly to latitude 32°43′34.8″ N., longitude 117°11′03.2″ W., thence northwesterly to the point of beginning. All coordinates in this section use Datum: NAD 83.

**Note:** Mariners anchoring in these anchorages, excluding Anchorage A–6, should consult applicable local ordinances of the San Diego Unified Port District. Temporary floats or buoys for marking anchors are allowed. Fixed moorings, piles or stakes are prohibited. All moorings shall be positioned so that no vessel, when anchored, shall at any time extend beyond the limits of the area. See Chart of the Port Notice 6–97, a copy of which can be obtained by calling (619) 683–6495.

Dated: March 20, 1998.

**J.C. Card,**
*Vice Admiral, U.S. Coast Guard Commander, Eleventh Coast Guard District.*

[FR Doc. 98–8959 Filed 4–3–98; 8:45 am]
BILLING CODE 4910–15–M

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 180

[OPP–300639; FRL–5784–4]

RIN 2070–AB78

### Rimsulfuron (N-((4,6-dimethoxypyrimidin-2-yl)aminocarbonyl)-3-(ethylsulfonyl)-2-pyridinesulfonamide); Pesticide Tolerance

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** This regulation establishes a time limited tolerance for residues of rimsulfuroron in or on tomatoes. E.I.duPont de Nemours and Company, Inc. requested this tolerance under the Federal Food, Drug and Cosmetic Act (FFDCA), as amended by the Food Quality Protection Act of 1996 (Pub. L. 104–70).

**DATES:** This regulation is effective April 6, 1998. Objections and requests for hearings must be received by EPA on or before June 5, 1998.

**ADDRESSES:** Written objections and hearing requests, identified by the docket control number, [OPP–300639], must be submitted to: Hearing Clerk (1900), Environmental Protection Agency, Rm. M3708, 401 M St., SW., Washington, DC 20460. Fees accompanying objections and hearing requests shall be labeled ''Tolerance Petition Fees'' and forwarded to: EPA Headquarters Accounting Operations Branch, OPP (Tolerance Fees), P.O. Box 360277M, Pittsburgh, PA 15251. A copy of any objections and hearing requests filed with the Hearing Clerk identified by the docket control number, [OPP–300639], must also be submitted to: Public Information and Records Integrity Branch, Information Resources and Services Division (7502C), Office of Pesticide Programs, Environmental Protection Agency, 401 M St., SW., Washington, DC 20460. In person, bring a copy of objections and hearing requests to: Rm. 119, CM #2, 1921 Jefferson Davis Hwy., Arlington, VA.

A copy of objections and hearing requests filed with the Hearing Clerk may also be submitted electronically by

1

2

3

4 # UNITED STATES DISTRICT COURT

5 ## SOUTHERN DISTRICT OF CALIFORNIA

6 DANIEL RENARD,                          ) Case No:
                                         )
7         Plaintiff,                      ) [County of San Diego Superior Court Case No.
                                         ) 37-2007-00073093-CU-BC-CTL]
8 v.                                      )
                                         )
9 SAN DIEGO UNIFIED PORT DISTRICT, et )
  al.,                                    ) **DECLARATION OF SERVICE**
10                                        )
          Defendants.                     )
11                                        )

12      I, the undersigned declare under penalty that I am over the age of eighteen years and not a party
13 to this action; that I served the individuals on the service list attached hereto the following documents:
   **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §1441(b) (FEDERAL**
14 **QUESTION)**
   in the following manner:

15      1) __  By personally serving the individual(s) named by delivering copies of the
16 offices of the address.  Time of delivery: _____ a.m./p.m.

17      2) __  By leaving, during usual office hours, copies in the office of the person served
   with the person who apparently was in charge and thereafter mailing copies (first class mail,
18 postage prepaid) to the person served at the place where the copies were left.

19      3) __  By leaving copies at the dwelling house, usual place of abode, or usual place of
   business of the person served in the presence of a competent member of the household or a
20 person apparently in charge of his office or place of business, at least 18 years of age, who was
   informed of the general nature of the papers, and thereafter mailing copies (first-class mail,
21 postage prepaid) to the person served at the place where the copies were left.

22      4)  X  By placing a copy in a separate envelope, with postage fully prepaid, for each
   address named below and depositing each in the U.S. mail at San Diego, California and by
23 sending via facsimile to the number listed below.

24 Daniel Renard
   P.O. Box 6301
25 San Diego, CA 92166
   (619) 675-1692
26 Plaintiff In Pro Per

27      Executed on December 17, 2007, at San Diego, California.

28
                                         _____
                                         Connie L. Bellatti

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 145602     - BH

December 17, 2007
12:28:55

Civ Fil Non-Pris
USAO #.: 07CV2347 CIVIL FILING
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC# 35165

Total-> $350.00

FROM: CIVIL FILING
      RENARD V. SAN DIEGO UNIFIED PO

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
DANIEL RENARD

**DEFENDANTS**
SAN DIEGO UNIFIED PORT DISTRICT

**(b)** County of Residence of First Listed Plaintiff    San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

'07 CV 2347 JAH JMA

FILED
07 DEC 17 PM 12: 32
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY:                    DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Daniel Renard, In Pro Per, P.O. Box 6301, San Diego, CA 92166, (619) 675-1692

Attorneys (If Known)
San Diego Unified Port District, Ellen Gross Miles, Deputy Port Attorney, 3165 Pacific Hwy, San Diego, CA 92101, (619) 686-6219

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☑ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) |
| ☐ 196 Franchise | | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 862 Black Lung (923) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | **FEDERAL TAX SUITS** |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 871 IRS—Third Party 26 USC 7609 |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 875 Customer Challenge 12 USC 3410 |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | ☐ 890 Other Statutory Actions |
| | | | | | ☐ 891 Agricultural Acts |
| | | | | | ☐ 892 Economic Stabilization Act |
| | | | | | ☐ 893 Environmental Matters |
| | | | | | ☐ 894 Energy Allocation Act |
| | | | | | ☐ 895 Freedom of Information Act |
| | | | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☑ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 USC 1441

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                      DOCKET NUMBER

DATE 12/17/07

SIGNATURE OF ATTORNEY OF RECORD    Ellen Gross Miles

**FOR OFFICE USE ONLY**

RECEIPT # 145602    AMOUNT $350    12/17/07 BH    APPLYING IFP            JUDGE            MAG. JUDGE

# ORIGINAL